IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Annette Bennett, ) | Civil Action No. 8:07-986-CMC-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Annette Bennett, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 47 years old as of the Administrative Law Judge's (ALJ) second decision. (R. at 26, 33-34, 58.) She has a high school education (R. at 69), and has worked as a sewing machine operator and motel housekeeper. (R. at 64, 79-86, 238-39.) She claims she became disabled on August 15, 2003, due to right knee, back, and leg pain. (R. at 58, 63, 72, 76.)

The plaintiff filed her application for DIB on February 6, 2004. (R. at 146.) The plaintiff's application was denied initially and upon reconsideration. (R. at 33-43.) At the plaintiff's request, an ALJ conducted a hearing on February 8, 2005, at which plaintiff and

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

her attorney were present (R. at 22-32, 45-54.) On June 17,2005, the ALJ issued an unfavorable decision, finding the plaintiff not disabled. (R. at 11-21.) The Appeals Counsel denied plaintiff's request for review (R. at 4-6), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

The plaintiff filed a complaint seeking judicial review of the Commissioner's final decision on January 25, 2006. (R. at 189.) On August 4, 2006, the Commissioner moved the Court for an entry of judgment with order of remand pursuant to sentence four of 42 U.S.C. § 405(g). (R. at 184-85, 90.) On August 8, 2006, the Court granted the motion, ordering that, upon remand, the Appeals Council assign the case to an ALJ to evaluate the record in light of additional evidence the plaintiff submitted concerning a knee replacement surgery in March 2005, and provide a rationale for the weight assigned to all medical source opinions of record, including the opinion of R. Yarbrough, M.D., a treating physician, that Plaintiff's condition satisfied Listing § 1.02. (R. at 182-83.) The Appeals Council, in turn, vacated the ALJ's June 2005 decision, and remanded the case to an ALJ to provide the plaintiff the opportunity to update the medical records and complete the administrative record, further evaluate whether her impairments met Listing § 1.02, give further consideration to her residual functional capacity, and evaluate the treating source opinions in accordance with the regulations. (R. at 194-95.)

On February 8, 2007, a new hearing was held, at which the plaintiff, her attorney, and a vocational expert were present. (R. at 230-41.) At step three of the five-step sequential evaluation process mandated by the regulations to evaluate the plaintiff's claim for benefits, the ALJ found that she did not have an impairment that met or equaled a Listing, specifically Listing §§ 1.02 and 1.04. (R. at 149.) Instead, at step five, relying on vocational expert testimony, the ALJ found that the plaintiff's residual functional capacity did not prevent her from performing a significant number of other jobs in the national economy, including the unskilled sedentary jobs of surveillance systems monitor and telephone quotation clerk. (R. at 153.) Therefore, the ALJ again found the plaintiff not disabled. (R. at 153).

The plaintiff then filed this action seeking judicial review of the ALJ's decision.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff principally contends that the ALJ erred in failing to find that her knee condition met the criteria of Listing 1.02, 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. The Court agrees and finds that an award of benefits is justified.

> Listing 1.02 requires the following:
>
>> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., sublaxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>>
>> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

*Id*. It is undisputed between the parties that the ALJ must compare each of the listed criteria to the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986). Generally, "[f]or a claimant to show that [his] impairment matches a Listing, [he] must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Importantly, the ALJ must first identify the relevant listed impairments. *Cook*, 783 F.2d at 1173. "He should then [compare] each of the listed criteria to the evidence of [the claimant's] symptoms." *Id*.; *see also* 20 C.F.R. § 416.926(a). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook*, 783 F.2d at 1173.

The defendant concedes that the ALJ failed to perform the analysis as prescribed. (Def. Brief at 11, 149.) The ALJ's entire discussion of the Listing consisted of the following:

> I have considered the claimant's complaints of knee pain under section 1.02 of the Listing of Impairments for motor dysfunction of a joint, which requires, in this case, involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b.

(R. at 149.) The defendant does not dispute the legal deficiency of the ALJ's analysis but contends that the ALJ was right to conclude that the plaintiff does not meet the full Listing because she has not demonstrated an inability to ambulate as defined by the regulations.

Specifically, the defendant argues that the regulations state that "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that **limits the functioning of both upper extremities**." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b) (emphasis added).  The defendant argues, therefore, that because the plaintiff only uses one cane (R. at 108-11, 119-22) and not two, then she fails to meet the ambulation criteria of Listing 1.02 that both upper extremities be limited.

There are two problems with the defendant's position.  The first is that such reasoning is not reflected in the ALJ's decision.  As stated, he summarily concluded that the plaintiff had not shown an inability to ambulate effectively.  (R. at 149.)  The ALJ did not discuss the plaintiff's undisputed use of a cane or his treating physician's conclusion that the plaintiff was not capable of "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," the definition of "effective ambulation," 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2).  (R. at 116.)

Second, the plaintiff responds that use of a walker or two canes is only an exemplary criteria in the regulation and, therefore, the plaintiff's use of only one cane does not disqualify her from meeting the Listing.  The plaintiff emphasizes that the principal definition of "ineffective ambulation" is "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).  By extension, the plaintiff contends that, while the regulation indicates that such a condition will "generally" be evidenced by use of a device which limits the functioning of *both* upper extremities, *id*., such is not dispositive.

The parties have not directed the Court to any case authority interpreting Listing 1.00(B)(2)(b)(2) to require, without exception, the use of a walker or two canes before the ineffective ambulation criteria of Listing 1.02 can be established.  The absence of such devices has certainly been a substantial consideration relied upon by other courts.  *See, e.g., Buckley v. Commissioner of Social Security*, 2005 WL 2318235, at *5 (E.D. Mich.

September 22, 2005) ("However, Plaintiff's own admissions and medical records confirm that he did not "ambulate ineffectively", as defined in 1.00B2b, which requires that a claimant demonstrate the need for a hand-held assistive device that requires the use of both hands such as a walker, or crutches, for a period of twelve months or longer.")

In *Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. November 27, 2007), the Fifth Circuit concluded that the plaintiff had not shown an inability to ambulate effectively, as defined by Section 1.00(B)(2)(b), in large part, because the record indicated that the plaintiff was "able to walk with the help of a single cane, not a walker, two crutches or two canes." *Id*. at *4. As with other courts considering the matter, however, the Fifth Circuit did not end its analysis there but instead, looked at the totality of the evidence, noting further that the plaintiff had indicated that she was able to climb stairs with the use of a handrail and that she was able to walk two blocks at a time. *Id*; *cf. Morrison ex rel. Morrison v. Commissioner of Social,* 2008 WL 647753, at *2 (3rd Cir. March 11, 2008) (involving no mention of ambulatory devices but finding that the plaintiff could walk home from school, participate in gym, basketball, volleyball, baseball); *Carlton v. Astrue*, 2008 WL 681184, at *7 n.1 (E.D.N.C. March 07, 2008) (finding that plaintiff only used a single-handed cane but noting further that the plaintiff admitted to walking half mile and treating physician's restriction only to avoidance of constant walking on concrete floor). None of these courts determined, as a matter of law, that the Listing can only be met if the claimant uses two canes or a walker.

This totality of the evidence approach seems to be the most prudent one and consistent with the regulations. It seems reasonable that whether a plaintiff is "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2), would typically require a consideration of more factors than simply the type of ambulatory device used by the claimant. The regulation itself states,

> Therefore, ***examples*** of ineffective ambulation ***include, but are not limited to***, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out

> routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b)(2).

To that end, the plaintiff has put forward substantial evidence that her knee problems interfere seriously with her ability to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living:

- She spends most of the day lying down (R. at 234);

- She must keep her leg propped up because when it is down it swells and becomes more painful (R. at 234, 237);

- X-rays revealing bilateral tricompartmental osteoarthritis (R. at 119);

- Severe valgus deformity of the right knee (R. at 108);

- Antalgic gait (R. at 101-103, R. at 113);

- A cane to assist in ambulation (R. at 108);

- Inability to sustain any activity such as standing and walking (R. at 116);

- Total right knee arthroplasty (R. at 223-229);

- Chronic pain in her knees (R. at 101-103, 105-106, 108, 113, 116, 120-122, 130, 223); and

- A past history of laparoscopic surgery x 2 to the right knee and x 1 to the left knee (R. at 120-122).

None of this evidence was considered in regards to Listing 1.02, because, as stated, the ALJ made no analysis whatsoever. (See R. at 149.)

Critically, the plaintiff's treating physician, Dr. R.K. Yarbrough, expressly indicated that the plaintiff had an "inability to ambulate effectively," defined as "not being capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." (R. at 116.)   The ALJ never specifically addressed this opinion.

The ALJ did identify what likely amounts to substantial evidence to decline to give the opinion of Dr. Yarbrough, full and controlling weight, generally. (R. at 151-52.) The ALJ performed a relatively thorough analysis of Dr. Yarbrough's opinion and explained his basis for rejecting it as *controlling*. *Id*.  The ALJ seemed principally compelled by the lack of

restrictions on the plaintiff, including no restriction from work.  (R. at 152.)  But, simply because Dr. Yarbrough's opinion is not entitled to dispositive weight, does not mean that all of his opinions may simply be disregarded.  As stated, the ALJ never specifically discussed Dr. Yarbrough's conclusion that the plaintiff could not effectively ambulate.  Even before the ALJ considered Dr. Yarbrough's full opinion, in making his residual functional capacity assessment at step four, the ALJ should have considered Dr. Yarbrough's specific opinion as to ambulation and its effects on the plaintiff's daily living -- as evidence relevant to the Listing analysis.  He did not.  And even in the context of the ALJ's treating-physician analysis, he never expressly rejected Dr. Yarbrough's conclusion regarding the plaintiff's limited ability to ambulate and certainly never explained such rejection, to the extent it was intended to be necessarily implied.  Unfortunately, this was the precise purpose of the original remand.  (R. at 194.)  In vacating the ALJ's original decision, the Appeals Council stated that while the ALJ had rejected Dr. Yarbrough's opinion because that opinion imposed no restrictions, the ALJ had failed to consider Dr. Yarbrough's opinion as it specifically related to Listing 1.02.  *Id*.  Notwithstanding, the error was repeated in the second decision.

If Dr. Yarbrough was correct concerning the plaintiff's ability to ambulate, then disability should have been found at step three and a fuller treatment of the plaintiff's RFC and the weight of Dr. Yarbrough's opinion, generally, would have been unnecessary.

In a case involving a decision where the ALJ had performed a proper Listing analysis and had explained the basis of that decision, express emphasis by the ALJ on the lack of a walker or two canes might constitute unassailably substantial evidence upon which to conclude that the criteria of the Listing had not been met.  *See Bullock*, 2007 WL 4180549, at *4 (citing "deferential standard of review" as a consideration).  Moreover, the ALJ's treatment of Dr. Yarbrough's opinion might, under different circumstances, prove sufficient. In this instance, however, the ALJ was conclusory and non-specific in his treatment, at best, and made the absence of such ambulatory devices of no particular consequence in his determination that the plaintiff had not met the Listing.  In addition, he never specifically

9

dealt with the highly probative opinion of Dr. Yarbrough as to the nature of the plaintiff's ability to ambulate, even after remand. To the Court, these are compounding errors which cannot be accommodated.

Normally, the Court might remand the case for additional consideration. Here, however, it is loathe to do so a second time. Instead, an award of benefits is more appropriate because further proceedings would apparently serve no useful purpose, in this case. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987)*; Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1985). Likewise, an award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been consumed. *See Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984); *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982).

The plaintiff has put forward substantial evidence that she has met the Listing of 1.02. The opinion of her treating physician, in conjunction with other medical records and testimony cited above, constitutes substantial evidence to conclude that the plaintiff meets Listing 1.02 and, therefore, is disabled. The Commissioner has now had multiple opportunities to explain why substantial evidence exists to find that she does not. For whatever the reason, the ALJ did not even include a good-faith consideration of the issue in the last decision. The continued presence of legal errors in the treatment of the plaintiff's claim makes it clear that remand would serve no useful purpose.

The plaintiff's action for DIB benefits has been pending since February 6, 2004, not an insignificant amount of time. This Court remanded the matter the first time, on December 7, 2006. "People generally do not seek Social Security disability benefits . . . because they want to subsidize an already comfortable existence. In many cases, they seek benefits because they have nowhere else to turn." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 524 (D. Md. 2002). Where no useful purpose would be served by a remand and, in fact, justice would not be served by such an outcome, outright reversal is justified.

*Coffman*, 829 F.2d at 519. The Court, therefore, finds that the should be awarded the benefits she seeks.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this Court concludes that the ALJ's findings are not supported by substantial evidence and that substantial evidence demonstrates that the plaintiff is disabled. Accordingly, this Court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1383(c)(3) and that the case be remanded to take appropriate action regarding an award of DIB benefits to the plaintiff based on the disability alleged to have commenced on August 15, 2003.

IT IS SO RECOMMENDED.

                                              s/Bruce Howe Hendricks
                                              United States Magistrate Judge

May 28, 2008
Greenville, South Carolina